

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF MISSISSIPPI

SOUTHERN DIVISION

| | | |
|---|---|---|
| DARREN PUGH, J. WILLARD PUGH, JR., OSCAR PUGH AND BRIAN PUGH, INDIVIDUALLY AND ON BEHALF OF J. WILLARD PUGH, SR., Deceased | * * * * * * | |
| versus | * * * | CIVIL ACTION NO. 1:05cv85 WJG |
| EAGLE, INC.; NORTHROP GRUMMAN, INC.; D.B. RILEY, INC.; GASKET HOLDINGS COMPANY, INC.; FOSTER WHEELER CORPORATION; KAISER REFRACTORIES COMPANY; MCCARTY CORPORATION; OWENS-ILLINOIS, INC.; REILLY-BENTON CORPORATION; UNIROYAL, INC.; HALLIBURTON CO.; HALLIBURTON ENERGY SERVICES, INC.; MONTELLO, INC.; UNION CARBIDE CORPORATION; M-I, L.L.C.; BAKER HUGHES, INC.; FLINTKOTE COMPANY; FLINTKOTE MINES, LTD.; CAPE ASBESTOS FIBERS, LTD; ASBESTOS CORPORATION, LTD.; EXXONMOBIL CORPORATION; CHEVRONTEXACO CO. Defendants | * * * * * * * * * * * * * * * * * * | JURY DEMAND |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## COMPLAINT FOR DAMAGES

NOW INTO COURT, through undersigned counsel, come Darren Pugh, J. Willard Pugh, Jr., Oscar Pugh, and Brian Pugh, individually and on behalf of their deceased father, J. Willard Pugh, Sr., who allege the following:

### JURISDICTION

1

1.

The jurisdiction of this Court is invoked by federal diversity jurisdiction, 28 U.S.C. § 1332, because the parties to this civil action are citizens of different States and the amount in controversy will exceed the sum or value of seventy-five thousand dollars ($75,000.00), exclusive of interest and costs.

2.

Plaintiffs make the allegation that J. Willard Pugh died on February 16, 2002. Decedent resided in and died in Clarke County, Mississippi.

3.

Therefore, Darren Pugh, J. Willard Pugh, Jr., Oscar Pugh, and Brian Pugh, individually and on behalf of their deceased father, J. Willard Pugh, Sr., bring this wrongful death action.

4.

Plaintiffs allege that J. Willard Pugh, Sr. (hereinafter, "Decedent") died of complications as a result of his asbestos-related malignancies including throat and lung cancer. Further, that these malignancies were caused by the Defendants, as set forth herein, and that as the survivors, they are entitled to bring a wrongful death action.

5.

Plaintiffs name the following Defendants:

a. **Eagle, Inc.**, a corporation duly organized under the laws of Louisiana with its principal place of business in New Orleans, Louisiana.

b. **Northrop Grumman, Inc. (successor to Avondale Shipyards, Inc.)** a Delaware corporation with its principal place of business in California.

c. **D.B. Riley, Inc. F/k/a Riley-Stoker Corporation**, a Massachusetts

2

Corporation with its principal place of business in Worcester, MA.

d. **Gasket Holdings Company, Inc. (Successor to Flexitallic, Inc.)**, a Delaware Corporation with its principal place of business in Michigan.

e. **Foster Wheeler Corporation**, a Delaware Corporation.

f. **Kaiser Refractories Company (a Division of Kaiser Aluminum & Chemical Corporation)**, a Delaware corporation with its principal place of business in Houston, Texas.

g. **McCarty Corporation**, a Louisiana corporation with its principal place of business in Baton Rouge, Louisiana.

h. **Owens-Illinois, Inc.**, an Ohio corporation with its principal place of business in Toledo, OH.

i. **Reilly Benton Corporation**, a Louisiana corporation with its principal place of business in New Orleans, Louisiana.

j. **Uniroyal, Inc.**, a New Jersey Corporation.

k. **Halliburton Co.**, a corporation incorporated under the laws of the State of Delaware having its principal place of business in the State of Texas, and which is the successor to **Dresser Industries, Inc.** which was the successor to **Baroid Corporation**.

l. **Halliburton Energy Services, Inc.**, a corporation incorporated under the laws of the State of Delaware having its principal place of business in the State of Texas.

m. **Montello, Inc.**, a corporation incorporated under the laws of the State of Oklahoma having its principal place of business in the State of Oklahoma.

n.  **Union Carbide Corporation**, a corporation incorporated under the laws of the State of New York having its principal place of business in Texas.

o.  **M-I, L.L.C**, a corporation incorporated under the laws of the State of Delaware having its principal place of business in the State of Texas, and which is the successor to **Magcobar** (formerly a subsidiary of **Dresser Industries, Inc.**) and **IMCO** (formerly a subsidiary of **Halliburton Co.**).

p.  **Baker Hughes, Inc.**, a corporation incorporated under the laws of the State of Delaware having its principal place of business in the State of Texas, and which is successor to **Milwhite Co.**

q.  **Flintkote Company**, a corporation duly organized, created and existing under and by virtue of the laws of the State of Massachusetts, with its principal place of business in Boston, Massachusetts.

r.  **Flintkote Mines, Ltd.**, a non-U.S. Corporation.

s.  **Cape Asbestos Fibers Ltd**, a non-U.S. Corporation.

t.  **Asbestos Corporation, Ltd.**, a Canadian corporation.

u.  **ExxonMobil**, a New Jersey corporation with its principal place of business in Irving, Texas.

v.  **ChevronTexaco Company**, a Delaware corporation with its principal place of business in San Ramon, California.

6.

Plaintiffs now allege:

From approximately 1956 until 1976, Decedent worked in and around oil exploration and production activities. Decedent's job requirements included working in the mud

operations, crane operations loading and unloading mud, and on oil rigs in and around the drilling mud. A significant amount of the work, and thus exposure, took place in the oil fields of southern Mississippi. Decedent's heirs estimate his exposure occurred for the most part on a daily basis from 1956 until 1976.

7.

During the above referenced exposure period there were no warnings or instructions that were ever given regarding asbestos hazards, no safety training or provisions for asbestos safety.

8.

During his employment in the oil exploration and production activities, Decedent was exposed to raw asbestos in ground powder form in connection with down hole mud operations. He was also involved with the transportation and mixing of the drilling mud. This material consisted of and/or contained asbestos fiber packaged and sold by Montello, Bayroid, IMC, Milwhite, Magcobar, and others. Further, asbestos products were used in and around other drilling and exploration activities including the drill brakes.

9.

Each of the Defendants knew or should have known through their insurers, industry and medical studies, the existence of which were unknown to the Decedent, of the health hazards inherent in the asbestos-containing products they were selling, manufacturing or otherwise using. Instead of warning the Decedent and the general public about these dangers, certain Defendants have ignored, concealed or misrepresented such information, or condoned such concealment, in order to sell asbestos or asbestos-containing products and avoid litigation by those who were injured from asbestos inhalation. Those Defendants who have engaged in this

5

misconduct are specifically set forth within this Complaint, and their conduct specifically described hereinafter in the section which, in addition to general negligence or strict liability allegations, identifies other forms of specified misconduct as set out herein, and similarly identifies by name of the particular Defendant, and the specific counts of misconduct.

10.

Decedent alleges negligence against the defendants for failing to warn of the dangers associated with asbestos. The presence of asbestos dust and fibers in sufficient quantities to cause or contribute to Decedent's disease, renders each Defendant listed responsible for Decedent's injuries through fault, negligence, negligence per se, and liability for the fault of their personnel that were delegated specific duties with respect to their negligence arising out of these duties with respect to Decedent at a given exposure site. Defendants' conduct is set out more particularly:

a. At all times relevant hereto, Defendant, **Eagle, Inc.**, distributed, fabricated and/or installed asbestos containing products, including but not limited to, pipe covering, block, sprays, tile packing, cloth, tape, gaskets, refractories and cements, to which Decedent was exposed while such products were used at Decedent's job sites.

b. At all times relevant hereto, Defendant, **Northrop Grumman, Inc. as the successor to Avondale Shipyards, Inc.,** allowed the use, transportation and utilization of asbestos-containing products at its shipyard near Morgan City, Louisiana without providing adequate warnings or safety systems while Decedent was working at and around said shipyard.

c. At all times relevant hereto, defendant, **D.B. Riley, Inc. f/k/a Riley-Stoker Corporation**, sold, supplied, distributed, manufactured, installed and otherwise used asbestos containing materials, including, but not limited to, boilers, kilns, other high-heat producing

devices composed of and specified by Reiley-Stoker to use asbestos, asbestos pipe covering, block, cement, mortar, refractory, cloth, brick, packing, gaskets, and other asbestos containing materials to which Decedent was exposed while said products were at Decedent's job sites.

    d.    At all times relevant hereto, Defendant, **Gasket Holdings Company, Inc. as the successor to Flexatallic, Inc.,** designed, manufactured, fabricated, supplied, sold, marketed, warranted, and/or advertised asbestos-containing products including but not limited to "Flexatallic Gaskets" and gasket material to which Decedent was exposed while such products were at Decedent's job sites.

    e.    At all times relevant hereto, Defendant, **Foster Wheeler Corporation** sold, supplied, distributed, manufactured, installed, and otherwise used asbestos-containing materials, including, but not limited to, boilers, kilns, and other high-heat production devices composed and secified by Foster Wheeler Corporation, asbestos, asbestos pipe covering, block, cement, mortar, refarctory, cloth, brick, packing, gaskets and other asbestos-containing materials to which Decedent was exposed at Decedent's job sites.

    f.    At all times relevant hereto, Defendant, **Kaiser Refractories Company (A division of Kaiser Aluminum and Chemical Corporation** manufactured, distributed and/or installed asbestos-containing products, including, but not limited to, asbestos pipe covering, asbestos block, refractories and cements to which Decedent was exposed at Decedent's job sites.

    g.    At all times relevant hereto, Defendant, **The McCarty Corporation**, re-labeled, distributed, sold, fabricated, and/or installed asbestos-containing products, including but not limited to, block, sprays, cloth, tape, tile packing, gaskets, refractories and cements, to which Decedent was exposed at his job sites.

7

h. At all times relevant hereto, Defendant, **Owen-Illinois, Inc.**, mined, manufactured, distributed and/or installed asbestos-containing products, including but not limited to, pipe covering and block, to which Decedent was exposed during application, tear out, and/or during disturbance at Decedent's job sites.

i. At all times relevant hereto, Defendant, **Reilly-Benton Company**, distributed and/or installed asbestos-containing products, including but not limited to, pipe covering, block, sprays, tile, packing, gaskets, refractories, cloth, tape and cements, to which Decedent was exposed at Decedent's job sites.

j. At all times relevant hereto, Defendant, **Uniroyal, Inc.**, mined, manufactured and distributed under its label and the label of others, such as Johns-Mansville Corporation, H.K. Porter, Southern Textiles and other companies, asbestos-containing products, including but not limited to, gaskets and packing, cloth and tape, to which Decedent was exposed at Decedent's job sites.

k. At all times relevant hereto, **Halliburton Company** and its wholly-owned subsidiary, **Halliburton Energy Services, Inc.**, as successors to **Baroid Corporation** and **Dresser Industries, Inc.** and as former parents of **Magcobar** and **IMCO**, were manufacturers and distributors of asbestos and asbestos products, including but not limited to pure asbestos fibers and asbestos-containing specialty products, to which Decedent was exposed.

l. At all times relevant hereto, **Halliburton Energy Services, Inc.**, as successors to **Baroid Corporation** and **Dresser Industries, Inc.** and as former parents of **Magcobar** and **IMCO**, were manufacturers and distributors of asbestos and asbestos products, including but not limited to pure asbestos fibers and asbestos-containing specialty products, to which Decedent was exposed.

m.  At all times relevant hereto, **Montello, Inc.**, a manufacturer of asbestos product for petroleum down hole operations. Defendant was a manufacturer for itself and others.

n.  At all times relevant hereto, **Union Carbide Corporation** was a manufacturer and distributor of asbestos and asbestos products, including but not limited to pure asbestos fibers and asbestos-containing specialty products, to which Plaintiff was exposed while working at Decedent's job sites.

o.  At all times relevant hereto, **M-I, L.L.C**, as the successor to **Magcobar** and **IMCO**, was a manufacturer and distributor of asbestos and asbestos products, including but not limited to pure asbestos fibers and asbestos-containing specialty products, to which Decedent was exposed while working at Decedent's job sites.

p.  At all times relevant hereto, **Baker Hughes, Inc.**, as successor to **Milwhite Co.**, was a manufacturer and distributor of asbestos and asbestos products, including but not limited to pure asbestos fibers and asbestos-containing specialty products re-labeled by **Montello Inc.** for **Milwhite Co.** to which Decedent was exposed while working at Decedent's job sites.

q.  At all times relevant hereto, Defendant **Flintkote Company** mined, manufactured, distributed, sold and/or distributed asbestos-containing materials, including but not limited to, pure asbestos fiber, milled asbestos fiber, pulverized asbestos, asbestos cement, asbestos coverings and adhesives to which Decedent was exposed while present at Decedent's job sites.

r.  At all times relevant hereto, Defendant **Flintkote Mines Ltd.**, mined, manufactured, distributed, sold and/or distributed asbestos-containing materials, including but not limited to, pure asbestos fiber, milled asbestos fiber, pulverized asbestos, asbestos cement, to which Decedent was exposed while present at Decedent's job sites.

s. At all times relevant hereto, **Cape Asbestos Fibers, Ltd.** was an asbestos fiber supplier that was a source of Decedent's exposures at Decedent's job sites.

t. At all times relevant hereto, **Asbestos Corporation Limited** mined, manufactured, distributed, sold and/or distributed asbestos-containing materials, including but not limited to, pure asbestos fiber, milled asbestos fiber, pulverized asbestos, and asbestos cement, to which Decedent was exposed, while present at Decedent's job sites.

u. At all times relevant hereto, **Mobil Oil, n/k/a ExxonMobil Oil Corp.**, was a manufacturer of asbestos dumdum. Further, Decedent worked on and around well sites and barges owned and/or operated by Exxon, Mobil and/or Humble Oil Company (n/k/a ExxonMobil Oil Corp.), where he was exposed to asbestos and asbestos-containing materials.

v. At all times relevant hereto, **ChevronTexaco**, owned or operated well sites and barges owned and/or operated by Chevron, Texaco and Gulf Oil Corp. where Decedent was exposed to asbestos and asbestos-containing materials.

11.

Each of the Defendants knew or should have known through industry and medical studies, the existence of which was unknown to Decedent of the health hazards to Decedent inherent in the asbestos-containing products which were prepared, supplied, and sold for use in the State of Mississippi. Instead of warning Decedent, other intended users, and the general public about these dangers, the Defendants ignored or actively and fraudulently concealed such information, or condoned such concealment, and commanded, directed, advised, encouraged, aided, abetted, or conspired with others or each other in so doing in order to sell and use asbestos products and avoid litigation by those who were injured from asbestos exposures. Such actions or inactions of the part of Defendants constitute gross negligence and show a

callous disregard for the rights and safety of Decedent and others giving rise to the imposition of punitive damages against the Defendants herein.

12.

As a direct and proximate result of having inhaled, ingested or otherwise being exposed to asbestos, Decedent suffered permanent and painful injuries which proved to be fatal. Plaintiffs would further show that Decedent suffered physical and mental pain and anguish, loss of wages, loss of wage earning capacity.

## COUNT ONE
### Negligence

13.

Decedent realleges and incorporates the foregoing allegations of this Complaint as if fully set forth herein.

14.

Each of the Defendants had a duty to Decedent to exercise the highest standard of care in designing, manufacturing, packaging, marketing, selling, and supplying asbestos, which is an extraordinarily and inherently dangerous substance. Defendants breached duties owed to Decedent including without limitation the duty:

(a) To select types of asbestos or alternate materials that would reduce or eliminate health hazards to those who would work with, and in the vicinity of, asbestos.

(b) To warn adequately of the extraordinary health hazards known by the Defendants to be associated with asbestos use.

(c) To instruct adequately in methods of using asbestos that would reduce the danger of inhalation or ingestion of asbestos dust.

(d) To test adequately the asbestos products to determine the dangers concomitant with their use.

(e) To remove the asbestos products from the stream of commerce upon discovering their dangerous properties.

15.

As a direct and proximate result of the Defendants' aforesaid breaches of their duties to Decedent, Decedent has sustained

16.

In breaching or materially assisting others in breaching their duties to Decedent, the Defendants acted intentionally, with gross negligence, recklessly, maliciously and wantonly in that the Defendants and each of them knew or should have known through data available exclusively to them that asbestos was inherently and extraordinarily dangerous if used in the manner intended and foreseen by the Defendants, and that each of their aforesaid breaches of duty would result in the injuries suffered by Decedent.

17.

WHEREFORE, Plaintiffs demands judgment against the Defendants jointly, severally and collectively for all damages.

## COUNT TWO
### Strict Liability

18.

Plaintiffs reallege and incorporate the foregoing allegations of this Complaint as if fully set forth herein.

19.

The Defendants and/or their predecessor or successor entities were engaged in, or materially participated in, or aided and abetted in the business of selling or distributing asbestos products and/or used or required the use of or allowed the use of asbestos products which were expected to and did reach the various locations in the State of Mississippi, without substantial change in the condition in which they were sold, where the products released asbestos fibers which were inhaled and ingested by Decedent.

20.

As sold or distributed, the asbestos was in a defective condition unreasonably dangerous to Decedent who was an intended and foreseeable user or bystander of the use of the asbestos. These defects included, without limitation, the following:

(a) Inherent and known properties common to the asbestos sold by the Defendants that created unreasonably high potential for causing respiratory diseases, cancer and other health problems to workers.

(b) Lack of warnings or lack of sufficient warnings by the Defendants of the inherently dangerous properties of asbestos when used for the purpose for which it was manufactured and sold.

(c) Lack of instructions or lack of sufficient instructions by the Defendants for eliminating or minimizing the health risks inherent in the use of asbestos.

(d) Lack of reasonable inspections by the Defendants of their asbestos products to ensure that such asbestos products contained sufficient warnings of the dangerous properties of asbestos.

(e) Lack of reasonable inspections by the Defendants of their asbestos products to ensure that such asbestos products contained sufficient instructions for eliminating or minimizing the health risks inherent in the use of asbestos.

(f) Lack of tests or lack of sufficient tests by the Defendants to determine the harmful effects of asbestos on intended users and bystanders.

(g) Defective designs by the Defendants calling for the inclusion of asbestos in products that did not require asbestos, and where alternate, equally suitable substances were available.

(h) Lack of warnings or lack of sufficient warnings by the Defendants upon their discovering the full extent of the dangers presented by asbestos-containing materials and products.

21.

Each of the Defendants knew or should have known that Decedent would be exposed to their asbestos products without inspection of the medical literature by Decedent on the adverse health effects of asbestos. By marketing the asbestos-containing products without warning of the dangerous characteristics of the products, the Defendants represented to Decedent and to the public, who were justifiably relied upon, that asbestos was not dangerous.

### WRONGFUL DEATH DAMAGES

22.

As provided by Miss. Code Ann. §11-7-13, Plaintiffs are entitled to recover damages for the aforesaid wrongful death of the decedent, including, but not limited to:

    a. severe past physical pain and suffering between the time of injury and death;

  b.  severe past mental, emotional and psychological pain and suffering;

  c.  loss of future wages;

  d.  loss of earning capacity;

  e.  loss of life expectancy;

  f.  loss of enjoyment of life;

  g.  hedonic damages;

  h.  such damages allowable by law as the trier of fact may determine to be just, taking into consideration all the damages of every kind to the decedent and all damages of every kind to the plaintiff.

23.

Decedent's heirs, Plaintiffs herein, had a very close and loving relationship with their father, J. Willard Pugh. As a result of his death, they have suffered, and will continue to suffer, permanent injuries and damages as a result of the defendants' conduct, including but not limited to:

  a.  damage for the physical pain and mental anguish sustained by Decedent prior to his death;

  b,  loss of companionship, love and affection of Decedent;

  c.  loss of anticipated financial earnings by the Decedent;

  d.  Decedent's loss of enjoyment of life;

  e.  past, present and future mental, emotional and psychological pain and suffering;

  f.  funeral and burial expenses;

15

g.     such damages allowable by law as the trier of fact may determine to be just, taking into consideration all the damages of every kind to the Plaintiffs.

24.

WHEREFORE, Plaintiffs demand judgment against the Defendants jointly, severally and collectively for all damages.

## COUNT THREE
### Punitive Damages

25.

Plaintiffs re-allege and incorporate the foregoing allegations of this Complaint as if fully set forth herein.

26.

As a direct and proximate result of all the Defendants' gross negligence and breaches of their duties to Decedent as delineated in all counts above, Decedent sustained the asbestos related injuries, diseases, illnesses and/or conditions set forth above. In addition, Decedent suffered physical pain and medical treatment. Decedent incurred medical expenses. Decedent suffered disability, impairment of wage earning capacity, lost wages, and a diminution in quality and enjoyment of life, which includes mental anguish, fear, and severe emotional distress associated with knowing that there is no cure for these diseases and illnesses.

27.

In breaching their duties to Decedent as described above, the Defendants have acted intentionally, with gross negligence, recklessly, maliciously and/or wantonly in that the Defendants knew or should have known through data available to them that asbestos was inherently and extraordinarily dangerous if used in the manner intended or foreseen by the Defendants, and that their aforesaid breaches of duty would result in the complained of injuries and damages to Decedent. Defendants' actions were performed intentionally and/or with disregard for the health and safety of Decedent.

28.

WHEREFORE, Plaintiffs demand judgment against the Defendants jointly, severally and collectively for punitive or exemplary damages in addition to compensatory damages for the Defendants= outrageous conduct as set forth herein.

**JURY DEMAND**

Plaintiffs demand a trial by jury on all claims on which he has the right to a trial by jury.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of their deceased father, J. Willard Pugh, demand judgment against all Defendants, jointly, severally, and collectively, as follows:

(1)   For compensatory damages in excess of $75,000 to compensate Plaintiffs for the physical pain and suffering, mental pain, suffering and anguish, medical expenses and lost wages on behalf of their deceased father as well as all of the damages suffered by Plaintiffs individually, as identified above, including but

       not limited to mental and emotional damages associated with their father's painful illness and resulting death.

(2)    For punitive damages;

(3)    For prejudgment interest from the date of the filing of this Complaint;

(4)    For costs of this suit and attorney fees; and

(5)    For such other and further relief as may be deemed appropriate.

_____
James Backstrom (MS Bar Number1674)
Denham, Backstrom, O'Barr & Hollingsworth, Ltd.
424 Washington Avenue
Post Office Drawer 580
Ocean Springs, Mississippi
Telephone: (228) 875-1234
Facsimile: (228) 875-4553

**Attorneys for Plaintiffs**